NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

|  |  |  |
|---|---|---|
| DARRYL DENMARK, | : | |
| | : | Civ. No. 20-830 (CCC) |
| Petitioner, | : | |
| v. | : | **OPINION** |
| THE ATTORNEY GENERAL OF THE STATE OF NEW JERSEY, et al., | : | |
| Respondents. | : | |

**CECCHI, District Judge**

Pro se petitioner Darryl Denmark, a state prisoner at East Jersey State Prison in Rahway, New Jersey, petitions for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. Denmark challenges his state court convictions for first-degree murder and related weapons offenses. ECF No. 1. For the reasons set forth below, the petition is denied and a certificate of appealability shall not issue.

**I.   BACKGROUND**[1]

The facts and procedural history are set forth in the opinion of the Superior Court of New Jersey, Appellate Division, addressing Denmark's direct appeal of his conviction and sentence:

> Shortly before midnight on April 1, 2009, Ormont Logan was shot on Clendenny Avenue in Jersey City. He later died of his wounds. Logan's close friend, James Choice, witnessed the shooting from his car parked across the street, after spending five to ten minutes observing Logan and the shooter having a conversation. Choice

---

[1] Pursuant to 28 U.S.C. § 2254(e)(1), this Court affords deference to the factual determinations of the State court. *Id.* ("In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence.").

> told the police that he knew who shot Logan, and he "wanted to take care of it" himself. Later that night, after Logan died at the hospital, Choice was brought to the Hudson County Prosecutor's Office to speak with homicide detectives.
>
> According to Prosecutor's Detective Efrain Diaz . . . he feared that if Choice left the Prosecutor's Office without revealing the shooter's identity, Choice would then "take matters into his own hands." Consequently, Diaz and several other detectives interviewed Choice at length in an effort to convince him to tell them the shooter's name. They eventually invited the victim's mother to come into the interview room to entreat Choice to tell what he knew.
>
> At first, Choice was reluctant to make any statement or identify the shooter. He told the detectives that he did not want be labeled a "tattle-tale" and feared retribution because the shooter was a member of the Bloods street gang. After continued prompting from the detectives and Logan's mother, Choice named defendant, whom he called "D", as the shooter. He told the detectives that D was the father of Jessica R's baby. Logan's mother told the police that D had recently been released from jail.
>
> After checking a computer database, the detectives determined that Jessica had recently posted bail for Daryl Denmark. They also determined that defendant fit Choice's general physical description of the shooter. One of the detectives pulled up defendant's photograph from a police database, and Diaz showed Choice the photo to determine whether this was the person whom Choice knew as D and whom he claimed was the shooter. When showing Choice the photo, Diaz asked him whether that was the person who shot his brother.[2] Choice replied in the affirmative.

*State v. Denmark*, No. A-1584-12T3, 2014 WL 5419577, at *2–3 (N.J. Super. Ct. App. Div. Oct. 27, 2014) (footnotes omitted).

Denmark was tried by a jury and convicted of first-degree murder and related weapons offenses. *State v. Denmark*, No. A-2218-17T3, 2019 WL 2427556, at *1 (N.J. Super. Ct. App. Div. June 11, 2019). He was sentenced to an aggregate term of 40 years imprisonment in May 2012. *Id.* at *1. The Appellate Division affirmed in October 2014, *id.*, and certification was denied in March 2015, *State v. Denmark*, 221 N.J. 220, 110 A.3d 933 (2015). Denmark petitioned for post-

---

[2] "At the trial, Choice testified that Logan was like a brother to him, and he called him his brother." *State v. Denmark*, No. A-1584-12T3, 2014 WL 5419577, at *2 n.3 (N.J. Super. Ct. App. Div. Oct. 27, 2014).

conviction relief ("PCR"); his petition was denied in February 2017 after an evidentiary hearing, and his subsequent motion for reconsideration was denied in August 2017. *Denmark*, 2019 WL 2427556, at *1. The Appellate Division affirmed in June 2019, *id.*, and certification was denied in November 2019, *State v. Denmark*, 240 N.J. 142, 220 A.3d 994 (2019).

Denmark filed this petition in January 2020, asserting that he was deprived of his due process right to effective counsel because his trial counsel failed to: 1) retain an identification expert and 2) properly advise Denmark of his right to testify at trial. ECF No. 1 at 5–7. The State responded in September 2020 (ECF No. 8), and Denmark did not file a reply.

## II.  LEGAL STANDARD

The district court "shall entertain an application for a writ of habeas corpus [o]n behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). A petitioner must establish his entitlement to relief for each claim presented in his petition based upon the record that was before the state court. *See Eley v. Erickson*, 712 F.3d 837, 846 (3d Cir. 2013); *Parker v. Matthews*, 567 U.S. 37, 40–41 (2012). District courts are required to give great deference to the determinations of the state trial and appellate courts. *Renico v. Lett*, 559 U.S. 766, 773 (2010).

If the state courts have adjudicated a claim on the merits, the district court shall not grant a writ of habeas corpus unless the state court adjudication:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

3

28 U.S.C. § 2254(d)(1)–(2). Federal law is "clearly established" if it is clearly expressed in "the holdings, as opposed to the dicta" of the United States Supreme Court. *See Woods v. Donald*, 575 U.S. 312, 316 (2015). "When reviewing state criminal convictions on collateral review, federal judges are required to afford state courts due respect by overturning their decisions only when there could be no reasonable dispute that they were wrong." *Id*. If a petitioner challenges a state court's allegedly erroneous factual determination, the state court's determination "shall be presumed to be correct [and the] applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1).

Under these standards, the relevant state court decision for federal habeas corpus review is the last reasoned state court decision. *See Bond v. Beard*, 539 F.3d 256, 289–90 (3d Cir. 2008). These standards apply "even where there has been a summary denial" by the state court. *Cullen v. Pinholster*, 563 U.S. 170, 187 (2011).

### III.  DISCUSSION

The Sixth Amendment guarantees the accused the "right . . . to have the Assistance of Counsel for his defense." U.S. Const. amend. VI. *Strickland v. Washington*, 466 U.S. 668, 686 (1984), set forth the standards for claims of ineffective assistance of counsel. Such claims have two necessary components. *Id*. at 687. First, a petitioner must "show that counsel's representation fell below an objective standard of reasonableness," *id*. at 687–88, meaning he "must identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment." *Id.* at 690. Second, a petitioner must establish prejudice, i.e., a reasonable probability that the result of the trial would have been different absent the deficient act or omission. *Id.* at 687.

On habeas review, it is not enough that a federal judge would have found counsel ineffective. The judge must find that the state court's resolution of the issue was unreasonable, a

4

higher standard. *Harrington v. Richter*, 562 U.S. 86, 101 (2011). Denmark has not met this standard.

### A.     Right to Testify

A defendant has a constitutional right to testify on his or her own behalf. *Rock v. Arkansas*, 483 U.S. 44, 49–53 (1987). "The *Strickland* standard is applicable when a petitioner claims his attorney was ineffective by denying him his constitutional right to testify." *Palmer v. Hendricks*, 592 F.3d 386, 394 (3d Cir. 2010) (quotations and citation omitted). Denmark argues that counsel was ineffective for: 1) failing to "properly advise petitioner of his right to testify on his own behalf during trial," and 2) failing to "discuss petitioner's right to be a witness in a case involving misidentification," which "left the jury [with] the open question 'if petitioner did not commit the crimes charged, where was he[?]" ECF No. 1 at 7 (quotations omitted).

Denmark has not provided evidence that counsel failed to properly advise and adequately discuss his right to testify. To the contrary, the record supports the Appellate Division's finding that counsel consulted with Denmark on this issue. Denmark, under oath, engaged in the following colloquy with his attorney after the State rested its case:

> [Counsel]: [Do you know] that you have a constitutional right to testify?
> [Defendant]: Yes. Yes.
> [Counsel]: And I've discussed that with you—your right. Correct?
> [Defendant]: Yes.
> [Counsel]: And [co-counsel] has discussed that with you. Correct?
> [Defendant]: Yes.
> [Counsel]: And we discussed that with you not only here today, but on a number of prior occasions. Correct?
> [Defendant]: Yes.
> [Counsel]: And you understand that the right to testify or not to testify is yours, and yours alone. Correct?
> [Defendant]: Yes.

> [Counsel]: And you're not under the influence of any substances today?
>
> [Defendant]: No.
>
> [Counsel]: No—and have you had time to think about whether or not you want to take the witness stand?
>
> [Defendant]: Yes.
>
> [Counsel]: And what is your decision?
>
> [Defendant]: No. I'm not going to take the stand.
>
> . . .
>
> [Counsel]: And has anybody forced you to make this decision?
>
> [Defendant]: No.
>
> [Counsel]: Is this decision entirely your own?
>
> [Defendant]: Yes.
>
> [Counsel]: Did you make this decision after hearing my opinion and [co-counsel]'s opinion, as well as considering whatever opinions that you may have consulted?
>
> [Defendant]: Yes.
>
> [Counsel]: And—and, once again, no one has coerced you to make this decision. Right?
>
> [Defendant]: No.

*State v. Denmark*, No. A-2218-17T3, 2019 WL 2427556, at *1–*2 (N.J. Super. Ct. App. Div. June 11, 2019) (brackets in original; citing ECF No. 8-46 at 9–10 (transcript)); *see also id.* at *3 ("Defendant discussed his right to testify with counsel, as defendant was questioned about it on the record after the State rested.").

In light of Denmark's affirmation, under oath, that he understood he had a constitutional right to testify, that he discussed his right with trial counsel and co-counsel on a number of occasions, that he heard counsels' opinions on the matter, and that he had time to think about whether he wanted to testify, the Appellate Division's determination that this claim is without merit was not contrary to or an unreasonable application of *Strickland*. *See Freeman v. Davis*, No. 18-8269, 2021 WL 4705009, at *22 (D.N.J. Oct. 7, 2021) ("The state court's factual determination [that] the record did not support Petitioner was not informed of her right to testify is entitled to

6

Case 2:20-cv-00830-CCC Document 11 Filed 01/31/23 Page 7 of 10 PageID: 2476

considerable deference on habeas review."); *Starks v. Davis*, No. 18-16525, 2020 WL 6707944, at *7 (D.N.J. Nov. 16, 2020) ("Based both on counsel's credible testimony during PCR proceedings and Petitioner's colloquy with the trial court, the PCR courts [found] that counsel had adequately explained Petitioner's right to testify to him and that Petitioner, in light of counsel's adequate advice on the risks of testifying on his own behalf, had chosen not to take the stand and had confirmed that fact to the trial court."). Accordingly, habeas relief on this claim is denied.

### B. Identification Expert

Denmark also argues that trial counsel was ineffective for failing to retain an identification expert. The Appellate Division reasonably found that this claim is without merit. The court summarized the evidence on this issue from the PCR hearing as follows:

> The Law Division judge who denied the PCR petition did so after an evidentiary hearing during which defendant called a forensic psychologist. He testified extensively regarding the unreliability of eyewitness identifications, based on his experiences and review of the literature. His testimony, albeit extensive, was general in nature.
>
> Defendant also testified during the evidentiary hearing. He admitted that he had known the eyewitness since childhood, knew the eyewitness's nickname, and was acquainted with his mother.
>
> Defendant's trial attorney was cross-examined about the eyewitness identification. He said that it was his trial strategy, based on discussions with defendant, to establish that the eyewitness could not have seen the shooting because he was not in the area. Counsel indicated that defendant had told him, when the two reviewed discovery together, that the eyewitness was not at the scene. The trial attorney also said that defendant, in the words of the Law Division judge, "didn't hide the fact that he was on the scene and that he had had a dispute with the . . . victim in this particular case and that the victim had had some kind of, you know, romantic relationship with . . . the mother of [defendant's] child." Counsel also indicated that the eyewitness refused to speak to his investigator in advance of trial.
>
> Counsel testified he had never used an identification expert at trial. He would not have done so in this case because the issue was not that the eyewitness was mistaken, but that the eyewitness was simply not present. Counsel also said that he attempted to put the most reasonable construction on the facts as was possible because "I have to stand in front of fourteen people and with a straight face, tell them a . . . story that is believable, more believable than the State's theory . . . ." He

> claimed he presented alternative defenses only where it would not cause him to lose credibility before a jury.
>
> The judge relied heavily on counsel's testimony that since defendant could not credibly dispute his acquaintance with the eyewitness, the strategy would be to demonstrate that the eyewitness was not present at the scene. Counsel also had inconsistencies regarding the trajectory of the bullets that he planned to argue created doubt about the eyewitness's presence, and therefore doubt about his credibility. The manner in which counsel presented the identification issue to the jury was based entirely on placing as favorable a slant as possible on irrefutable facts. This established that counsel's decision not to challenge identification was sound trial strategy.

*Denmark*, 2019 WL 2427556, at *2.

In affirming the PCR court's denial of this claim, the Appellate Division found that, "in light of the record developed at the evidentiary hearing," this claim "lacked sufficient merit to warrant much discussion in a written decision." *Id.* at *3. The court added only that, "[h]ad counsel presented an identification expert, such testimony would have been irrelevant, given the eyewitness's familiarity with defendant." *Id.*; *see also id.* at *1 ("[T]he eyewitness was acquainted with defendant . . . and knew the mother of defendant's child . . . . The eyewitness knew the shooter's nickname, had known him since childhood, gave a physical description of the shooter, and told the detectives that the shooter was the father of a one-year-old son.") (internal quotations and brackets omitted); *Denmark*, 2014 WL 5419577, at *8 (in addressing a related identification claim on direct appeal, the Appellate Division noted that "there was no realistic possibility of a mistaken identification").

Given the state court's factual findings that the eyewitness knew the defendant and witnessed the shooting from a short distance, the Appellate Division's finding that identification expert testimony would have been "irrelevant" and, therefore, counsel was not ineffective for failing to retain an identification expert, was not contrary to or an unreasonable application of *Strickland*. *See, e.g.*, *Gilreath v. Bartkowski*, No. 11-5228, 2014 WL 4897053, at *12 (D.N.J. Sept.

8

30, 2014) ("[T]he PCR Judge found the victim's identification to be so strong and truthful that on a sharp cross-examination, the expert's challenge to the identification on theoretical issues would have been detrimental to the defense rather than helpful. . . . On the PCR appeal, the Appellate Division found that trial counsel's decision not to call an identification expert was strategic and reasonable. The court agreed with Judge Reddin's conclusion that an expert witness probably would not have added any substantive assistance to the defense in this case and could have been harmful."); *Watkins v. Trierweiler*, No. 17-12667, 2020 WL 4192563, at *9 (E.D. Mich. July 20, 2020) ("This case involved only one eyewitness . . . who . . . was familiar with Watkins, and they had an extensive personal history. . . . Considering the abundant impeachment evidence available, counsel's strategic decision to forego an eyewitness identification expert was reasonable."). Accordingly, habeas relief on this claim is denied.

## IV.   CERTIFICATE OF APPEALABILITY

Pursuant to 28 U.S.C. § 2253(c), unless a circuit justice or judge issues a certificate of appealability, an appeal may not be taken from a final order in a proceeding under 28 U.S.C. § 2254. A certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). "A petitioner satisfies this standard by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003).

Here, reasonable jurists would not find the Court's habeas ruling debatable. Accordingly, no certificate of appealability shall issue.

9

## V. CONCLUSION

For the foregoing reasons, Denmark's petition is denied with prejudice on the merits and no certificate of appealability shall issue. An appropriate order follows.

**DATED**: January 31, 2023

s/ Claire C. Cecchi<br>**CLAIRE C. CECCHI, U.S.D.J.**